[S. F. No. 2379.   In Bank.—July 2, 1900.]

CITY OF OAKLAND et al., Petitioners, v. Hon. E. C. HART, Judge of Superior Court of Sacramento County, Respondent.

DISQUALIFICATION OF JUDGE—CONSENT OF PARTIES TO CALL IN QUALIFIED JUDGE—ESTOPPEL.—Where a disqualified judge calls in a qualified judge from another county, with the consent of both parties to a cause, for the trial thereof, the parties, after such qualified judge has begun to act in the cause without objection, are estopped from raising the objection that the disqualified judge had no power to select his successor, or to request another judge to sit in the cause.

ID.—JURISDICTION—PROHIBITION.—The case is not one to which the rule that consent will not confer jurisdiction is applicable; and the judge called in by consent of the parties being qualified to act, prohibition will not lie to prevent him from acting as judge in the cause.

PETITION for writ of prohibition to prevent the respondent from trying a cause in the Superior Court of Alameda County. E. C. Hart, Acting Judge.

The facts are stated in the opinion of the court.

W. A. Dow, City Attorney of Oakland, and R. Y. Hayne, for Petitioners.

Garret W. McEnerney, for Respondent.

Page, McCutchen, Harding & Knight, and A. A. Moore, for Contra Costa Water Company.

THE COURT.—This is an original petition in this court for a writ of prohibition prohibiting and restraining the respondent from any further acting as judge in a certain action pending in the superior court of the county of Alameda, in which the Contra Costa Water Company is plaintiff and these petitioners are defendants.

The facts necessary to be stated are these: The said action of the Contra Costa Water Company against these petitioners (the City of Oakland et al.) was brought to restrain the defendants therein from enforcing a certain ordinance fixing the rates to be charged for water furnished by the said Contra Costa Water Company to the city of Oakland. It was brought in the superior court of the county of Alameda, and assigned to Department Three of that court, of which the Hon. F. B. Ogden is presiding judge. When the pendency of this action was first called to the attention of Judge Ogden, in April, 1900, he suggested to counsel for the respective parties that he considered himself disqualified to try the case because he was a rate-payer for water furnished by said water company, and suggested that counsel agree upon some other judge to try the case. He suggested, also, that two of the other judges of Alameda county were also disqualified for the same reason; that Judge Green of said county was not disqualified, but he was too busy and crowded with other cases to try said case; but that if counsel consented the case might be transferred to Judge Green and he could select another judge. To this the attorney for the defendants (petitioners here) stated that he did not desire the matter to take that course, but did desire that Judge Ogden himself should select the judge; and that he (the attorney) did not desire to take the responsibility of agreeing upon another judge, but would consent to whatever judge might be named by Judge Ogden. The matter was mentioned several times with the same result; and on May 7, 1900, Judge Ogden, with the knowledge and consent of the attorney for the defendant therein, as well as with the consent of the attorney for the

plaintiff, wrote the following telegram to be sent to the respondent herein:

"May 7, 1900.

"To Judge E. C. Hart, Sacramento, Cal.:

"All counsel in case of *Contra Costa C. W. Co. v. City of O.*, as well as judges of this county, unite in request that you sit in said cause. Judge here is disqualified. If you accept, can you be here Wednesday morning to hear demurrer?

"F. B. OGDEN."

This telegram was sent to the other three judges of the superior court of Alameda county and was signed by Judge Green and Judge Ellsworth, the other judge not being found. It was returned to Judge Ogden and a pencil mark was made across the names of the other two judges, Judge Ogden thinking that the dispatch ought to be sent in his name alone. This telegram was delivered to the attorney of the defendant and one of the attorneys of plaintiff in said case, and was by them taken to the telegraph office and forwarded to the respondent at Sacramento. This selection of the respondent, Judge Hart, was consented to by the attorney of the defendants; this fact appears not only upon the face of the telegram itself, which was delivered to the attorney for the defendants and by him and the other attorney forwarded, but also by the testimony in the case, which was submitted by consent on the hearing of this application. It was thought best to get a judge from Sacramento because, as Sacramento had its own waterworks, there were no questions in that county about fixing rates. The respondent Hart immediately telegraphed to Judge Ogden that he would accept the appointment and would be in Oakland on the next Wednesday morning, and was there at that time. Judge Ogden accompanied the respondent to the bench of the court and introduced him to the attorneys as Judge E. C. Hart, who had been selected to try the case. No objection whatever was made by the attorney for the defendants therein to Judge Hart sitting in the case; and Judge Ogden caused the clerk of the court to enter the following order: "The demurrer and the motion herein coming on regularly this day for hearing, whereupon Hon. E. C. Hart, judge of the superior court of Sacramento, was requested by counsel for the plaintiff and de-

fendant herein to act in the above-entitled cause, three of the judges of the court being disqualified, and Judge Hart having consented thereto, it is ordered that the matters herein be and the same are hereby continued to Wednesday, May 19, 1900." A demurrer to the complaint, having been interposed, was argued before Judge Hart, who took the same under advisement and afterward made an order overruling the same, and giving the defendants certain time to answer. Other matters were submitted and considered, without any objection to the respondent acting, before additional counsel was retained by the defendants therein; afterward additional counsel was employed by defendants, and "thereafter all of said attorneys and counsel for the defendants in said cause took part in several interlocutory applications in the same before the Hon. E. C. Hart without any objection." Thereafter a motion was made by defendants to compel the plaintiff to submit certain books to inspection, and this motion was submitted to Judge Hart, who afterward denied the same, but on application of defendants added to the order that it was made without prejudice to a renewal of the motion. This occurred about the 11th of June, 1900, down to which time no objection whatever had been made to Judge Hart sitting in the case; but on June 12, 1900, for the first time, counsel for defendants in said cause objected to the further action of respondent as judge in the cause, and to his hearing or determining any matter or proceeding therein; and after testimony and argument the objection was overruled by respondent. Thereafter this present proceeding for a prohibition was instituted in this court.

The position of the petitioners here is that Judge Ogden was disqualified from trying the case because he was a water ratepayer; that for the same reason he had no jurisdiction to request another judge to sit; and that his act in requesting the respondent to sit as judge of the superior court of Alameda county was without jurisdiction, and that the consent of the parties could not give it validity. As both sides assume that Judge Ogden was disqualified to try the case because he was a rate-payer, we will assume that proposition to be true for the purposes of this case, although we are not to be understood as definitely determining that question. Neither are we at all inclined to hold

that Judge Ogden, even if disqualified to try the case, could not have legally called in the respondent to hear and determine the case in question without any request or consent of the parties, for the constitution provides, without any qualification, that "a judge of any superior court may hold a superior court in any county at the request of the judge of the superior court thereof"; but it is not necessary to consider that proposition, because here the respondent was called to try the case with the consent, and practically at the request of the petitioners. This is not a case to which the rule applies that consent cannot give jurisdiction. It is, for instance, not a case like *Bates v. Gage*, 40 Cal. 183, where it was sought by stipulation to give the district court jurisdiction to sit in a certain county at a time when it had no jurisdiction to sit there, and where it was said that consent of parties could not confer jurisdiction upon a court "when, in the nature of things, it could acquire no jurisdiction —they could not by their stipulation make a court." In the case at bar, the superior court of Alameda county had full jurisdiction of the subject matter of the action and of the parties, and the respondent was a duly elected and acting superior judge, qualified officially to preside in that court. There was no disqualification attaching to him personally, and therefore the question whether consent can confer jurisdiction upon a personally disqualified judge does not arise. Therefore, the petitioners, having requested Judge Ogden to select a judge, and having approved the selection which he made, and carried his request to the respondent, and having proceeded with the hearing of the case before the respondent without objection until important matters had been disposed of, cannot now be heard to repudiate their own act. We have been referred to no case where it has been held that a party, having consented to the calling in of a qualified judge to preside over a court having competent jurisdiction of the case, can in the midst of the hearing of the action stop further proceedings upon any such suggestion of the irregularity or invalidity of the manner in which he was called in as is made in the case at bar. The case of *Lillie v. Trentman*, 130 Ind. 16, is very similar to the case at bar. There the regular judge, being disqualified in a certain case, had called in another judge to try it, and one of the parties having made

no objection until certain matters in the case had been determined, then objected to his finally disposing of the case.  The court having intimated that it might presume that the order calling in the special judge was legally made, but that it did not care to put its decision on that ground, said: "What we do decide is that when a judge has been called or an attorney has been appointed to try a cause, as provided in section 415 of the Revised Statutes of 1881, and no objection is made to his appointment at the time, or to his sitting in the cause at the time he assumes jurisdiction, all objections to the regularity of such appointment shall be deemed waived.  A practice that would permit a party litigant to proceed for months before a *de facto* judge, to make issues, and obtain rulings upon legal questions involved in the controversy, and then, if not satisfied with some of his rulings, or not disposed to go into trial when the cause is ready for trial, would be able, in a moment, to arrest proceedings and oust the jurisdiction of the judge, cannot be tolerated."  In *Field v. Mark*, 125 Mo. 502, where the regular judge of the court was disqualified on the ground of interest, and had appointed another judge to try the cause, with the consent of parties, the court said: "He could have called in another judge without consulting the other side; but when, as the record shows, he consulted their wishes, and they agreed with him upon Judge Sloan, the point is without merit either in ethics or law."  Our conclusion is, that the petition for a peremptory writ should be denied.

The foregoing views make it unnecessary to consider the question whether or not Judge Green, who was free from all color of disqualification, did also request the respondent to act as judge of the superior court of Alameda county in the case in question.  We see nothing in the point attempted to be made that when Judge Ogden sent the dispatch to the respondent he thought that the latter was the person who had formerly been attorney general of the state.  He intended to request the person who was superior judge of the county of Sacramento; and, when the latter appeared at Oakland to take his seat as judge in the superior court there, the events which then took place constituted of themselves a request that the respondent act as

judge—all of which was with the additional knowledge and consent of counsel for petitioners.

Respondent had no intimation that he was objectionable to either party until June 12th. If petitioners, instead of consenting that respondent be called in, and really requesting it to be done, had objected to him before any proceedings were had in the case, he would have been free to refuse to act if he had preferred to take that course; but in the present condition of the case it would, no doubt, be somewhat embarrassing for him to retire without consent of both parties.

The prayer of the petitioners is denied, and the proceeding is dismissed.

BEATTY, C. J., concurring.—I concur in the judgment and generally in the foregoing opinion, but am unwilling to assent to the view intimated therein that Judge Ogden could have called in another judge of his own selection without the consent of the parties. The course that should have been pursued was that originally proposed by Judge Ogden, viz., to send the cause to Judge Green's department, not because the case was governed by the express provisions of subdivision 4 of section 170 of the Code of Civil Procedure, as amended in 1897 (Stats. 1897, p. 287), for it is at least doubtful if that amendment applies except in cases of actual bias on the part of the judge; but the transfer should have been made to Judge Green's department, because it has been held here that in a county where there are several departments of the superior court the disqualification of the judge to whose department a particular cause has been originally assigned is no ground for a change of venue if there is another judge of the same court before whom it may be tried. (*Oakland v. Oakland Water Front Co.*, 118 Cal. 251.) The only ground upon which that decision can be supported is that it is the duty of the superior court in the case supposed to reassign the cause to a department whose judge is not disqualified, for otherwise there could be no trial at all, or else the parties would have to await the assignment of a judge by the governor, or submit to the selection of a judge by a judge himself disqualified and possibly deeply interested in the result of the trial. I do not think the law intends that a litigant should

ever be placed in such a dilemma, and, according to our repeated decisions, he cannot be so placed in a county where there is but one judge of the superior court.  There, if the judge is disqualified for interest, consanguinity, or other cause, either party may move for a change of venue, and the motion must be granted without hesitation or delay.  (*Krumdick v. Crump,* 98 Cal. 117; *Anaheim Water Co. v. Jurupa Co.,* 128 Cal. 568.)  Nor can the right to a change of venue be defeated by the act of the disqualified judge in calling in another judge to hear the motion.  This was expressly decided in *Remy v. Olds* (Cal., Nov. 4, 1895), 42 Pac. Rep. 239, but since a rehearing was granted in that case and the controversy settled by the parties it cannot be cited as authority.  In a more recent case, however, the principle upon which *Remy v. Olds, supra,* was decided has been affirmed in emphatic terms: "The reason why the judge of the county cannot call another to try the case is stated in *Krumdick v. Crump, supra.*  It is that the judge shall neither try his own case nor select his judge." (*Santa Cruz Bank v. Taylor,* 125 Cal. 249.)  This is the controlling principle, and it applies in all counties alike whether there be one department of the superior court or more than one department.  No litigant can be compelled to accept a judge selected by a judge himself disqualified.  He can always defeat such an attempt by moving, and insisting upon his motion, for a change of venue.

But it does not follow from this that a disqualified judge cannot, with the express consent of the parties, call in a judge from another county to try the cause, instead of transferring it to another county for trial.  In case of a change of venue it is made the duty of the judge to transfer the cause to the county agreed upon by the parties, and there is no reason why they should not be allowed to agree that, instead of changing the place of trial, the judge by whom they are both willing the cause may be decided should come to the county where it is pending and conduct the trial there.  The convenience of witnesses and the saving of expense would often be controlling reasons for such a course.

But the contention on the part of petitioners is that the plain words of the statute take from the disqualified judge the power

to invite another judge to preside in his place, even with the express consent of the litigants. To do sò, they contend, would be to "sit or act" in the case in a matter not included in the exceptions enumerated in section 170 of the Code of Civil Procedure. I do not construe the last clause of that section as an enumeration of exceptions to the rule against sitting or acting in a cause, but rather as a legislative declaration that the words "sit" and "act" are not used in a sense which would embrace the arrangement of the calendar, the regulation of the order of business, or the transferring of the action or proceeding to another court. This clause means nothing more than if it had said: But this inhibition shall not be construed as applying to the arrangement of the calendar, etc., and this is very different from an exception which strengthens the rule. It gives a sense to the words "sit or act" which excludes an order transferring the cause and all similar orders; and an invitation to a judge agreed upon by the parties is precisely analogous to an order transferring the cause to a county agreed upon. It is not sitting or acting in the cause in the sense of the statute.

In this case I consider that Judge Hart was invited by consent of the parties, and that at all events it was too late to object to his acting in the cause after the parties had voluntarily argued and submitted the demurrer to his decision. When another judge has been invited to try a cause by a disqualified judge the remedy for a dissatisfied litigant is to move for a change of venue. If he waives that remedy, if he consents either expressly or impliedly to the selection of the judge so invited, he cannot claim that his trial of the cause is an excess of jurisdiction.