394

NICOLÁS GARCÍA, Plaintiff and Appellee, *v.* PABLO SUÁREZ, Defendant and Appellant.

No. 7785. Argued January 16, 1940.—Decided March 30, 1940.

*Angel A. Vázquez* for appellant. *Arturo Aponte* and *F. R. Aponte* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

This is an injunction to recover possession, a remedy available for the speedy settlement of questions like the one at bar which has been in the courts of justice for about seven years.

Regular Judge Arjona decided to decline to try the case on the ground that he had already formed his own opinion and the case was tried *de novo* before substitute Judge González Fagundo who rendered a final judgment in favor also of the plaintiff on May 1, 1937. An appeal was taken therefrom by the defendant ten days afterwards.

At this stage and on March 31, 1938, the defendant filed a motion in the district court to quash all the proceedings had before the substitute judge, including the judgment, and to set a day for the parties to agree by stipulation as to the court to which the case should be transferred or to order the place of trial to be changed if the parties failed to agree. On June 2 the court overruled the motion and the defendant appealed six days afterwards.

On June 24, 1938, the transcript of the record and of the evidence was filed in the office of the secretary of this court. The transcript of the record includes the proceedings relating to the two appeals. The case was filed under No. 7785.

On August 26, 1938, the appellant filed his brief. Eight errors are assigned therein, the last of which refers to the motion to quash.

On November 10 following, the plaintiff and appellee moved to dismiss the appeal for failure to file a complete record. The appellee filed an opposition thereto in writing on December 9, 1938, and three days thereafter the motion was heard and an order made thereon on March 7, 1939, this court declaring that the dismissal sought did not lie because from the papers sent up there was enough to try the case on its merits and if there was anything missing in the record the omission could be supplied by the appellant himself.

The case was set for hearing on November 8, 1939, and was continued by stipulation between the parties and after resetting the same a hearing took place on January 16, 1940.

As the consideration and determination of the first seven errors would be unnecessary if the judgment were set aside, we will consider th eighth assignment first.

The defendant alleged in his motion, briefly, that upon the issuance by the regular District Judge of Humacao on March 25, 1936, of his order declining to try the case, the regular District Judge of Guayama was appointed in his

place to proceed therewith. He made an order to continue the case;

That on January 7, 1937, owing to the amount of business on the hands of the regular Judge of Humacao, the Governor appointed as substitute judge for thirty days to conduct criminal cases practicing Attorney González Fagundo who issued without authority orders to continue the case;

That on March 2, 1937, the same González Fagundo was appointed substitute judge to replace the regular judge during his absence from the Island, on leave granted him which expired on April 30, 1937; and

That the case was tried before the substitute judge on March 31, 1937, and was decided by a judgment rendered on May 1, 1937, the same substitute judge having settled the transcript, all of which without any authority to that effect, as the term for which he had been appointed had expired.

■ Two preliminary questions are raised by the plaintiff and appellee in connection with the above assignment, viz., that as the appeal was from an order made after judgment, the same should have been prosecuted separately, and that as evidence had been heard on the motion such evidence should have been sent up to this court by means of a statement of the case or bill of exceptions.

The first question is immaterial, because although different appeals are involved they may be prosecuted jointly, as the same had been taken within the same action.

■■ The second question is of importance because really the way to send up to an appellate court the evidence heard in the trial court is as the appellant suggests. It is well to remember that the same question was raised by means of a motion to dismiss filed by the appellee himself and decided by this court, in which it was stated that the papers sent up were sufficient for a consideration of the case on its merits, but added that should anything be omitted in the record the omission might be supplied by the appellant himself. In setting forth and finally considering the said merits we will

see what in this respect appears from the record which, as far as the appellant is concerned, is in the same condition as when the motion to dismiss was disposed of.

Two cases are invoked by the appellant in support of his contention, viz: *Saavedra* v. *District Court,* 43 P.R.R. 274, and *Annoni* v. *Blas Nadal's Heirs,* 94 F. (2d) 513:

In the former, in which the district judge declined to try a certain case, this court, through Mr. Justice Wolf, expressed itself as follows:

"Section 84 of the Code of Civil Procedure provides:

" 'If an action or proceeding is commenced or pending in a court, and the judge thereof is disqualified from acting as such, or if, for any cause, the court orders the place of trial to be changed, it must be transferred for trial to a court the parties may agree upon by stipulation in writing, or made in open court and entered in the minutes; or, if they do not so agree, then (to) the nearest court where the like objection or cause for making the order does not exist, as follows:

" '1. If in the district court, to another district court.'

"However, there is another law in force in Puerto Rico which authorizes the Governor to appoint judges in certain cases. It reads as follows:

" ' . . . . *Provided,* That the Governor, upon the recommendation of the Attorney General, may, if the public service requires it, order any other district judge to fulfill the duties of any judge regularly appointed when he is temporarily disqualified, either on account of illness or any other cause;' (Laws of 1904, p. 105.)

"Curiously enough, each of these acts was passed on the 10th of March, 1904. The courts, therefore, are bound to attempt to allow both acts to stand.

The jurisprudence of California is clear that under section 398 of the Cole of Civil Procedure, which corresponds to section 84 of our Code, the proprietary judge is bound to hear the parties and ultimately to transfer the case. *Krumdick* v. *Crump,* 98 Cal. 117; *Livermore* v. *Brundage,* 64 Cal. 299.

"In *People* v. *Juliá et al.,* 25 P.R.R. 262, a proprietary judge was away on vacation and the objection was made that the special act of March 10, 1904, did not apply to the case. This Court held that not only cases of sickness were included but also absences or

otherwise. Reading both acts with care we are of the opinion that the special act of March 10, 1904, covers disabilities in general and the cases where for some such disability a judge can act in no case, while section 84 specifically covers the case of a judge who is disqualified in a particular action as in the present case. Therefore, it became the duty of Judge Mestre to hear the parties in accordance with the said section 84.''

In the latter case, in which there was also involved a judge who declined to try a certain case, the Circuit Court of Appeals, First Circuit, through Justice Wilson, after referring to the acts cited in *Saavedra* v. *Court, supra,* expressed itself as follows:

''It is clear that these sections only authorize the Governor to act where by reason of the incapacity or absence of the regular district judge no judicial business can be transacted. The substitute judge in such case is appointed to 'hold court,' not to hear a particular case. *Saavedra* v. *Mestre, supra.* Judge Foote was not disqualified from holding his court and transacting all other judicial business except the hearing of this one case.

''It is also clear that section 84 of the Code of Civil Procedure 1911, Rev. St. & Codes 1913, section 5068, is the section applicable to the situation here, which provides that when an action is pending in a district court and the regular judge is disqualified for any reason from hearing it, it *must* be transferred to another district. It is obvious that Judge Foote could and should have acted under this section.

''Was Pérez then a de facto judge because the parties raised no objection to his action as judge in this case? We think he was not. In order that there may be a de facto judge, there must be a de jure office to be filled. (citations.) In *Norton* v. *Shelby County,* 118 U. S. 425, 441, 30 L. Ed. 178, the court said: 'But it is contended that if the act creating the board was void, and the commissioners were not officers de jure, they were nevertheless officers de facto, and that the acts of the board as a de facto court are binding upon the county. This contention is met by the fact that there can be no officer, either de jure or de facto, if there be no office to fill.'

''. . . . . . . . .

''There is no de jure office to be filled under the Puerto Rican statutes in case a regular judge is disqualified to hear a single *pending case.* The case *must* be transferred to another district in ac-

cordance with the provisions of section 84. The only office that can be filled by the Governor by the appointment of a substitute is one to which a substitute may be appointed so long as the conditions defined in section 2 of the act reorganizing the Judiciary of Puerto Rico, or in section 21 of the Code of Civil Procedure 1911, Rev. St. & Codes 1913, section 5005, may exist and to transact all judicial business that in the ordinary course may come before it. There being no de jure office to be filled, Pérez was neither a de jure nor a de facto judge. He did not become a de facto judge by consent of the parties in trying this case. As his acts were null and void, the case must be sent back to the District Court of Mayaguez for proceedings in accordance with section 84 of the Code of Civil Procedure." *Annoni* v. *Blas Nadal's Heirs,* 94 F. (2d) 513, 514, 515.

Therefore, there is no question whatever that the procedure that the District Judge of Humacao should have followed when declining to try this action was the one established in section 84 of the Code of Civil Procedure and that the appointment of the District Judge of Guayama in his place was not authorized by law. Nor is there any question either that the intervention of substitute Judge González Fagundo in the case by virtue of his appointment exclusively to try the criminal cases in the court's calendar was without legal authority therefor.

However, as said substitute judges confined themselves to the issuance of orders which did not carry with them at all a determination of the cases on their merits, we do not think that such grounds for the motion for nullity are of decisive importance.

When substitute Judge González Fagundo acted in the case and rendered a judgment, he did not do so pursuant to his first appointment but in the exercise of the power conferred by the second appointment, which was made out according to the very motion of the appellant in the following language:

"WHEREAS, Hon. Rafael Arjona Siaca, Judge of the District Court of Humacao, has been granted a leave of absence of 60 days, beginning March 1st, 1937.

" 'WHEREAS, it is necessary that a judge be designated to handle the cases of the Court during the absence of the regular judge.

" 'THEREFORE, I, Blanton Winship, Governor of Puerto Rico, by virtue of the authority in me vested by law, do hereby designate and appoint Attorney at Law, Francisco González Fagundo, to act as Judge of the District Court of Humacao, during the absence of the regular Judge, or until otherwise ordered by me.

" 'Witness my hand at the City of San Juan, Puerto Rico, this the 2nd day of March A. D. 1937.

" '(Sgd.) Blanton Winship, Governor.'

"See minute book of this Court, March 5, 1937, Vol. 122, folio 229."

As the appointment itself was that of a substitute judge in the place of an absent judge, it was made pursuant to law and the precedents. *Saavedra* v. *Court, supra; Annoni* v. *Blas Nadal's Heirs, supra,* and statutes therein cited, and *Balbaño* v. *Cintrón,* 53 P.R.R. 802.

█ That being so, and this case being still before the court, could the substitute judge consider the same like all other cases pending and take part in the same disregarding the procedure established by section 84 of the Code of Civil Procedure, which was not invoked by either party? Under the attendant circumstances, we are inclined to answer the question in the affirmative.

█ Now, the appellant maintains that when the substitute judge entered judgment on May 1, 1937, and when subsequently he intervened in the settlement of the record for the appeal, he had already ceased as a judge. On the contrary, the regular district judge, in his order denying the motion for nullity, asserts that on May 1, 1937, when judgment was rendered, he had not yet taken up his duties as a judge, in the following words:

"The decision of Judge González Fagundo was also adverse to the defendant and is dated May 1, 1937, when the regular judge had not yet taken up again the duties of his office, because the leave of absence granted him had not yet expired."

Are there any data in the record for resolving the conflict? We have just transcribed the appointment. It was made by the Governor for the substitute judge to act in the absence of the regular judge, there being added: "or until otherwise ordered by me." The leave of absence was for sixty days beginning on the 1st of March, but the appointment is dated the 2nd of said month and at the foot of the transcription thereof we also transcribed the reference to the minutes of the court of March 5, 1937, and this seems to indicate that the paper was registered thereon on the same date, when the same began to take effect. The appointment and the reference to the minutes, by themselves, render the decision doubtful.

The appellant lays more stress on another document, viz., the letter written by Attorney General B. Fernández García in answer to another received from Angel A. Vázquez, the attorney for the appellant. It is stated in said letter: "On March 2, 1937, the Governor appointed Attorney Francisco González Fagundo to act as the judge of said court during the absence on leave of sixty days granted to the regular judge and which he enjoyed from March 5 to April 30 of this year." The date March 5 corroborates what appears from the reference to the minutes. The date April 30 conflicts with the statement of the judge, that is, that on May 1 following he had not yet taken up again his duties in the court.

Said document is a letter, not a certified document. There is no explanation of the ground of the Attorney General for his statement that the leave of absence only lasted until April 30. It was a leave of absence for sixty days. From March 5 to April 30 sixty days had not elapsed. If the leave of absence began on March 5, May 1, was comprised within the sixty days.

Therefore, as the evidence introduced by the defendant and appellant did not overcome the assertion contained in the decision appealed from, such assertion stands and hence

the conclusion that the district judge, in rendering his judgment on May 1, 1937, acted within the term of his appointment.

■ As to the intervention by the judge in question after the expiration of his term in the settlement of the record for the appeal, it is sufficient to say that the statute—section 219 of the Code of Civil Procedure—provides that "A judge or judicial officer may settle and sign a bill of exceptions after as well as before he ceases to be such judge or judicial officer." Therefore, the appellant is absolutely wrong in maintaining that the action of the judge had no legal authority.

■ Having thus cleared up the situation, we shall proceed to a consideration of the other assignments of error. They are seven and it is therein alleged that it was error for the trial court to deny the motions of the appellant regarding the striking out of certain particulars from the supplemental complaint and regarding the dismissal of the action; that it was also error to overrule the demurrer to the supplemental complaint; to render judgment against the law, without being supported by the evidence; to decree the recovery of the land and the pulling down of what had been built, and to adjudge the defendant to pay attorney's fees.

The first of the above assignments, that is, that referring to the striking out of several particulars from the complaint, is without any merit at all.

As it has not been shown that the presence of such particulars in the allegation was prejudicial to the defendant, although technically the latter might be right in his contention that the same were superfluous, it would be necessary to conclude that the error involved was not one capable of bringing about the reversal of the judgment and, therefore, without any decisive merit. "The denial of a motion to strike from a complaint allegations, or parts of allegations, which in no way prejudice the defendant, is not error," as was held in *López* v. *American Railroad Co.*, 50 P.R.R. 1.

A knowledge of the facts involved in this litigation becomes necessary for the consideration and determination of the other errors assigned.

The complaint was entitled a petition for injunction to retain possession and was filed on September 27, 1933.

The plaintiff alleged therein that he had been and still was in possession of a piece of urban property located in Luquillo at the place known as Pueblo Viejo, consisting of a building lot measuring 578 square meters and bounded on the right side facing it, which is north, by a house of Coca Hermanos now Heirs of Aurelio Carambó, for a distance of 34 lineal meters; on the south by a house (shop or store) of Coca Hermanos now defendant Pablo Suárez; on the front side by the street over a distance of 17 lineal meters; and at the back side, over the same distance, by land of "Paloma" estate belonging to Francisca Bas;

That the defendant personally and through his brothers and employees entered the lot early in September, 1933, and is doing excavation work on a portion thereof about 15 meters long by 2 meters wide, which is duly described; and

That the defendant has forcibly committed acts against the will of the plaintiff and for the purpose of appropriating to himself the portion of land described in order to build an annex to his house.

On September 29, 1933, the court set October 10 following for the appearance of the parties. Five days before the day set the defendant filed a motion to strike out, and in April of 1935, that is, one and a half years afterwards, his answer.

He denied therein that he had committed that with which he was charged in the complaint and alleged in opposition that he has been in possession thereof ever since 1929 when the Municipality of Luquillo delivered to him, pursuant to an ordinance, a building lot which he describes, on which, after leaving an alley leading to the north side for the passage

of his workmen and of the owner of the adjoining lot, he built thereon, in the latter part of 1929, a one-story house to be used as bakery with a concrete oven and a sidewalk 1.45 meters wide and 24-meter long, the land occupied by the sidewalk being bound: on the north by plaintiff's house; on the south by the baker shop of the defendant; on the east by municipal land in the possession of defendant; and on the west by "La Paloma;"

That on August 23, 1933, he removed to the north side the two fire-doors of the oven which were facing west, piling up the wood on the sidewalk and building an eave on the upper part of the wall on the north side of the bakery building supported by two pillars which penetrate into the ground occupied by the sidewalk, which changes were made without any objection on the part of the plaintiff and were finished before he was served with copy of the complaint;

That the land involved in the litigation is that occupied by the sidewalk and has not been in the possession of the plaintiff at any time ever since 1929 and, therefore, that any action to which the plaintiff might be entitled regarding the same has prescribed.

On April 25, 1935, the plaintiff filed a supplemental complaint in which he alleged that after the filing of the original complaint the defendant built a wooden shed with galvanized iron roof extending all over the portion of his lot described by him in his complaint and that by such building the defendant has entirely deprived the plaintiff of the possession of the said portion of land.

He closed by praying the court to take into account the facts that had taken place after the filing of the complaint and to order the removal of the structures built, leaving the land which had been occupied free and clear all over its length.

On May 2, 1935, the defendant moved to strike out the supplemental complaint and to dismiss the action as aca-

demic. He, moreover, demurred to and answered the supplemental complaint and alleged that the same did not state facts sufficient to constitute a cause of action, and denied that he had erected the structure complained of after being served with copy of the complaint and insisted that he had begun and finished the same previously.

On March 9, 1936, that is, ten months after the filing of the latter papers, the court overruled the motion to strike out and the demurrer and set the hearing of the case for the 16th of the said month.

After a hearing, the judgment appealed from was entered and supported by the following opinion:

"On March 31, 1937, on which the present case was set for hearing, there appeared: the plaintiff personally and through his attorney Arturo Aponte, and the defendant personally and through his attorney Angel A. Vázquez, and they stated to be ready for trial.

"After hearing the evidence for both sides, the court set April 9, 1937, to take a view of the parcel of land in litigation, which view was taken on the day set at which the parties and their counsel were present.

"After considering the pleadings from both sides and having heard all of the evidence submitted by them, the court reaches the conclusion that the defendant has dispossessed the plaintiff of the parcel of land involved in this litigation, just as alleged in the original complaint and in the supplemental complaint filed in the instant case, and, therefore, the said complaints are sustained in all their particulars. The defendant, moreover, is adjudged to pay the costs, including $150 as attorney's fees."

As we know, it is alleged by the appellant that it was error for the court to deny the motion to strike out the amended complaint and to dismiss the action, and to overrule the demurrer to the said amended complaint, all of which questions being related to each other.

There is no doubt that originally the action was one to retain possession and that by virtue of the facts, as alleged in the supplemental complaint, it is also an action to recover possession.

Can the filing of such supplemental complaint be allowed? We think that under the attendant circumstances the question should be affirmatively answered and, therefore, that the second of the errors assigned is without merit, .and so is the third because if the supplemental complaint was kept in the record a dismissal of the action as being academic did not lie.

It is true that the new facts ought to have been pleaded immediately upon having knowledge thereof, but we fail to see that the delay could work to the prejudice of the defendant who fully knew the situation.

 Nor can prescription of the action be successfully alleged. The injunction proceeding had been instituted. The action petition had been filed. The filing of the injunction petition and not the date of the formal allegation that the acts sought to be committed had been so committed should be taken as the time for the prescription to begin to run. An equity proceeding is involved which should have been determined and which seems actually to have been determined by the first judge who tried the same without the filing of the supplemental complaint, and who took into consideration the facts just as they were shown by the evidence introduced at the trial.

We might as well quote from the case of *Collins* v. *Sargent*, 89 Cal. App. 107, 112, ratified years afterwards in *Union Oil Co.* v. *Reconstruction Oil Co.*, 20 C.A. (2d) 170, 184, as follows:

"The office of a supplemental complaint is to bring to the notice of the court and the opposite party matters which occurred after the .commencement of the action and which do or may affect the rights asserted and the rule asked in the action originally instituted. (Citations.) Generally the rights are to be determined as they were at the commencement òf the action, unless some event happens subsequently which affects the matters in issue, such as a change of the

title to the property involved in the litigation after the action was commenced, and the court cannot consider such subsequent matter unless it is presented by a supplemental pleading. (*Metropolis etc. Sav. Bank* v. *Barnet,* 165 Cal. 449, 453, 132 Pac. 833). Such facts, which change the liability of the defendants and the character of the relief sought, cannot be presented by an amendment to the complaint. (*Van Maren* v. *Johnson,* 15 Cal. 308, 311, 312.)

"The general rule, to which there are exceptions, is that in the actions at law the right to judgment depends upon the facts as they exist at the commencement of the action, but such is not the rule in equity. The relief administered in equity is such as the nature of the case, and the facts as they exist at the close of the litigation, demand; and supplemental complaints are not required in actions in equity in order to bring before the court those facts and circumstances occurring since the filing of the original cause. It would be surplusage if they were set up in a supplemental pleading, and equity does not require a useless thing. (*Pennsylvania Co.* v. *Bond,* 99 Ill. App. 535, 544, affirmed, see 202 Ill. 95 (66 N. E. 941).)"

Nor was it error for the court to overrule the demurrer of the defendant to the supplemental complaint, which demurrer is predicated upon the theory set out by appellant in the second and third assignments, viz., that here there is only involved an injunction to retain possession and not one to recover possession.

 The fifth assignment refers to the insufficiency of the evidence. In our opinion it is without merit.

It is mainly claimed that the property was not duly identified. The best answer is the very judgment appealed from which contains a full description of the portion occupied and which was ordered to be left "free and clear in the possession of the plaintiff without being disturbed therein by the defendant," and of the estate of the plaintiff of which said portion forms part, which description is supported by the pleadings and the evidence.

 As to the resolution of the conflict in the evidence in favor of the plaintiff, suffice it to say that neither passion, not prejudice, nor bias, nor manifest error has been shown.

Two judges on two different occasions weighed the same similarly.

 The sixth and seventh assignments of error are likewise without merit. The pronouncement regarding the removal of the annex or shed built by the defendant upon the portion of land wrongfully occupied by him and which he was ordered to leave free and clear in the possession of the plaintiff is supported by the law and the facts. The same applies to the imposition of the costs including $150 as fees for plaintiff's attorneys.

The judgment appealed from must be affirmed.